UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>JAMES O'LEARY, CPA,<br><br>                              Defendant. | Civ. Action No._____ |

# COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## SUMMARY

1. This case arises from the failure of Defendant James O'Leary, former chief financial officer of Beazer Homes USA, Inc. ("Beazer"), to reimburse the Company for cash bonuses, incentive and equity-based compensation, and profits from his sale of Beazer stock received during the 12-month period following the issuance of Beazer's quarterly and annual financial statements for its fiscal year 2006. Beazer was required to restate those financial statements due to a fraudulent

earnings management scheme perpetrated to artificially inflate Beazer's income and earnings during its fiscal year 2006.

2. This accounting misconduct – orchestrated by Beazer's Senior Vice President and Chief Accounting Officer Michael T. Rand ("Rand") to satisfy analysts' quarterly and annual earnings expectations – was executed in at least two different ways. First, Rand directed and supervised a reserve accounting scheme under which reserves for certain future homebuilding expenses were improperly established, inflated and/or maintained, so that they could later be used – and ultimately were used in fiscal year 2006 – to artificially boost income and earnings upon being eliminated.

3. Second, during fiscal year 2006, Rand also entered into a secret side agreement designed to allow Beazer to recognize revenue and income from purported "sales" of model homes in Beazer's subdivisions, while also sharing in future profits following the subsequent sales of those homes to third parties. Under this scheme as well, Beazer recognized millions of dollars in revenues and operating income which should not have been recognized under the Generally Accepted Accounting Principles ("GAAP") and in violation of the federal securities laws.

4. As a result of misconduct, Beazer filed with the Commission materially non-compliant periodic and annual reports for fiscal year 2006, reports which Defendant O'Leary certified, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, as being accurate.

5. In May 2008, Beazer restated its financial statements for various years, including fiscal year 2006, admitting that it had discovered financial reporting errors and/or irregularities "that required restatement resulting primarily from" the aforementioned misconduct.

6. Under Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243], Defendant is required to reimburse Beazer for all bonuses, incentive-based and equity-based compensation received and profits realized from the sale of his company's securities, for the twelve month periods following the first public issuance of Beazer's materially-noncompliant accounting statements. To date, however, Defendant has not complied with his reimbursement obligations.

7. By this action, the Commission seeks an order from the Court, pursuant to Section 304 of the Sarbanes-Oxley Act of 2002, requiring Defendant O'Leary to reimburse Beazer for the bonuses and incentive-based and equity-based compensation received, and the profits realized from his sale of Beazer stock, during the statutory time periods established by the Sarbanes-Oxley Act of 2002.

## JURISDICTION AND VENUE

8.  This Court has jurisdiction over this action pursuant to Section 3(b) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7202(b)] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e) & 78aa].

9.  Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws alleged in this Complaint occurred within this district.

## DEFENDANT AND RELATED PERSONS OR ENTITIES

10.  Defendant James O'Leary served as the chief financial officer of Beazer between August 2003 and March 2007. Among his duties as chief financial officer, Defendant was required to and did make certain certifications, pursuant to Section 302 of the Sarbanes-Oxley Act of 2002, in Beazer's quarterly and annual reports filed with the Commission concerning, among other things, the accuracy of Beazer's financial reports, the strength of its internal controls, and the lack of fraud during fiscal year 2006.

11.  Michael T. Rand ("Rand") worked as an accountant in Beazer's corporate office since 1996 and, from at least January 1, 2000 through June 2007,

was the Corporate Controller and later the Senior Vice President and Chief Accounting Officer for Beazer. Based in part, on the same misconduct described herein, the Commission filed a civil action against Rand on July 1, 2009, alleging violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a) and 78m(b)(5)], and Rules 10b-5, 13b2-1 and 13b2-2 promulgated thereunder [17 C.F.R. §§ 240.10b-5, 240.13b2-1 and 240.13b2-2], and acts and practices that aided and abetted violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1, 13a-11 and 13a-13 promulgated thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13].

12. <u>Beazer</u> was and is a home building company incorporated under the laws of Delaware and headquartered in Atlanta, Georgia. Beazer's common stock was and is registered with the Commission pursuant to Section 12(b) of the Exchange Act of 1934 and was and is listed on the New York Stock Exchange under the symbol "BZH." For all time periods relevant to this Complaint, Beazer's fiscal year-end was September 30 of each year.

13. As summarized herein, in May 2008, Beazer restated its financial statements for several years, including fiscal year 2006, following the discovery of

5

improper accounting schemes by its then-Chief Accounting Officer, Rand. In September 2008, Beazer consented to the issuance of a Cease-and-Desist Order by the Commission, relating to certain of the accounting misconduct summarized herein. In July 2009, Beazer entered into a Deferred Prosecution Agreement with the United States of America and the United States Attorney for the Western District of North Carolina.

14. <u>GMAC Model Home Finance, LLC</u> ("GMAC Model Home Finance") was and/or is a company involved in the sale and leaseback of model homes of builders.

## I.  The Manipulation of Land Inventory Accounts and Cost-to-Complete Reserves

15. Prior to 2006, Beazer's Chief Accounting Officer Rand and other Beazer employees, engaged in an accounting scheme involving "cookie jar accounting."

16. Specifically, Rand, along with other Beazer employees, improperly, and without appropriate justification or documentation, decreased Beazer's income by artificially establishing, increasing and/or maintaining future anticipated expenses or "reserves."

17. Rand and other Beazer employees executed this strategy by manipulating, among other accounts, Beazer's land development and house reserve accounts.

18. In fiscal year 2006, when Beazer was in jeopardy of not meeting analysts' expectations, Rand and other Beazer employees eliminated certain unnecessary excess reserves that had been built up, thereby improperly boosting Beazer's pre-tax income by over $27.5 million.

19. Beazer's arbitrary elimination of reserves to boost income resulted in financial statements that were not compiled in accordance with GAAP.

## II. The Sale-Leaseback Scheme

20. As a homebuilder, Beazer often builds "model homes" for prospective home-buyers to tour while the remainder of a neighborhood and its future homes are under construction. As one of the last homes to be sold, model homes often may not be sold to a home-buyer for years, and thus may not provide a homebuilder with revenue and income on their sale until years after construction.

21. Under its sales-leaseback program, Beazer sold its model homes to investors, typically at a discounted price, thereby permitting it to recognize revenue and income from the sales. Under the "leaseback" portion of the transaction,

Beazer leased back from the investor/buyer the same model homes, which Beazer could then use to show prospective home-buyers.

22. In or about December 2005, the first quarter of Beazer's fiscal year 2006, Rand entered into a secret side-agreement with one or more GMAC Model Home Finance personnel under which: (a) Beazer would "sell" the model homes and recognize revenue and income from such sales; (b) the homes would be leased back to Beazer for its use; but (c) Beazer would secretly receive a share of any profits from any subsequent sale of the model homes to a third party at the end of the leases.

23. Under GAAP, a seller is not permitted to recognize revenue and income from a sale in a sale-leaseback transaction if the seller retains a continuing interest in the property after it has been sold. Beazer's continuing and secret interest in a share of any profits from the ultimate sale of the models was such a continuing interest.

24. For the fiscal quarter ended December 31, 2005, Beazer closed on the sale-leaseback of 90 model homes with GMAC Home Finance. Beazer recognized approximately $8 million in pre-tax income from the transactions in violation of GAAP.

25. For the quarter ended March 31, 2006, Beazer closed on the sale-leaseback of an additional 79 model homes. Beazer recognized over $4.2 million in pre-tax income from the transactions in violation of GAAP.

26. For the quarter ended June 30, 2006, Beazer closed on the sale-leaseback of an additional 37 model homes. Beazer recognized approximately $1.6 million in pre-tax income from the transactions in violation of GAAP.

27. For the quarter ended September 30, 2006, Beazer closed on the sale-leaseback of approximately 140 additional model homes. Beazer recognized approximately $8.3 million in pre-tax income from the transactions in violation of GAAP.

### III. As a Result of the Misconduct, Beazer's Forms 10-Q and 10-K for Fiscal Year 2006 Were in Material Non-Compliance with the Securities Laws.

28. As a result of the above-described schemes, Beazer issued materially inaccurate and non-compliant accounting statements during its quarterly and annual public filings with the Commission during fiscal year 2006.

29. Specifically, in its Forms 10-Q for the various quarters in fiscal year 2006, the aforementioned schemes resulted in an overstatement of Beazer's operating income by up to 11.5%.

30. As a result of the aforementioned schemes, Beazer's Form 10-K filed on December 8, 2006 reflected an overstatement of approximately $50 million or 8.2% of annual operating income.

31. As the chief financial officer of Beazer, Defendant O'Leary was in a position of ultimate responsibility for Beazer's financial condition and Beazer's proper and accurate reporting of that financial condition to the public.

32. At the time Beazer filed its Forms 10-Q and 10-K, Rand and Beazer knew, or were reckless in not knowing, that Beazer's accounting statements were materially non-compliant with the federal securities laws.

## IV.   Beazer Was Required to Prepare Restatements.

33. Due to Beazer's material non-compliance with the financial reporting requirements of the federal securities laws, which were the result of the misconduct, Beazer was required to, and did, in fact, issue accounting restatements.

34. On May 12, 2008, Beazer filed accounting restatements for the fiscal year 2006. In various reports filed that day, Beazer restated its financial statements for fiscal 2006 and each of the first three quarters of fiscal 2006. In those filings Beazer acknowledged that it was "required" to file restatements "primarily" as a result of the aforementioned improper accounting:

During the course of the investigation, the Audit Committee also *discovered accounting and financial reporting errors and/or irregularities that required restatement resulting primarily from*: (1) inappropriate accumulation of reserves and/or accrued liabilities associated with land development and house costs ("Inventory Reserves"), and (2) inaccurate revenue recognition with respect to certain model home sale-leaseback transactions. (emphasis added.)

35. Those filings further advised of the existence, nature and extent of Rand's misconduct, acknowledged "material weaknesses in [Beazer's] internal control over financial reporting" – including in its control environment and the design of accounting policy, procedures and controls – "specifically related to the application of GAAP in accounting for certain estimates involving significant management judgments".

36. As set forth in those filings, Beazer acknowledged that its material weaknesses had several impacts on the Company's financial reporting, including "[i]nappropriate reserves and other accrued liabilities [being] recorded relating to land development costs, house construction costs and warranty accruals" and "[t]he accounting for certain model home sale and leaseback agreements [being] not in compliance with GAAP... [as] [t]he Company's arrangement for certain sale and leaseback transactions included various forms of continuing involvement which prevented the Company from accounting for the transactions as sales."

37.  Those filings went on to state that Beazer had "terminated our former Chief Accounting Officer who we believe may have caused, or allowed to cause, the internal control breakdown[]"; and that Beazer "believe[d] his termination has addressed concerns about the internal control deficiencies that we believe he caused or permitted to occur."

## V. During the Relevant Time Periods, Defendant Received Bonuses, Incentive and Equity Compensation and Profits From the Sale of Beazer Stock.

38.  During the 12-month periods following Beazer's filing of its inaccurate financial statements in 2006 – and before any restatement or correcting disclosure by Beazer – Defendant received bonuses, incentive and equity based compensation and profits from his sale of Beazer stock.

39.  During this same time period, Defendant was awarded options and shares of restricted Beazer common stock which were to vest in various subsequent years upon the achievement of certain performance criteria or continued employment. These options and shares failed to vest as the result of O'Leary's departure from Beazer in March 2007, resulting in their forfeiture.

40.  Defendant has not reimbursed Beazer for the bonuses, incentive and equity-based compensation and profits from his sale of Beazer stock received from Beazer during the relevant statutory periods.

## CLAIM FOR RELIEF

## COUNT I: FAILURE TO REIMBURSE
(Violation of Section 304(a) of the Sarbanes-Oxley Act of 2002)

41. The Commission realleges and incorporates by reference ¶¶ 1 through 40 above.

42. Beazer, by engaging in the aforementioned conduct, filed Forms 10-Q and a 10-K for fiscal year 2006 that were in material non-compliance with its financial reporting requirements under the federal securities laws.

43. Beazer's material non-compliance with its financial reporting requirements under the securities laws was the result of misconduct that improperly inflated Beazer's income by reducing or eliminating previously established artificial reserves and improperly recognizing sales revenue and income in sale-leaseback transactions involving their model homes.

44. Due to Beazer's material non-compliance with its financial reporting requirements, and as a result of the misconduct, Beazer was required to prepare accounting restatements for fiscal year 2006.

45. Defendant has failed to reimburse Beazer for the bonuses, incentive and equity-based compensation or profits from his sale of Beazer stock that he received or obtained during the statutory time periods established by the Sarbanes-Oxley Act of 2002.

46. The Commission has not exempted Defendant, pursuant to Section 304(b) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243(b)], from its application under Section 304(a) [15 U.S.C. § 7243(a)].

47. By engaging in the conduct described above, Defendant violated, and unless ordered to comply will continue to violate, Section 304(a) of the Act, 15 U.S.C. § 7243(a).

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendant committed the alleged violations.

### II.

Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), ordering Defendant to reimburse Beazer for all bonuses, incentive-based and equity-based compensation, and profits realized from his sale of Beazer stock during the relevant statutory time periods pursuant to and established by Section 304 of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7243].

### III.

Issue a judgment, as necessary and appropriate, to ensure that Defendant does not obtain indemnification from Beazer, or any entity or person acting on its behalf, which would offset or otherwise reduce in any way his personal obligation to reimburse the amounts required to be reimbursed under the Sarbanes-Oxley Act of 2002 and by this Court.

### IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## V.

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: August 30, 2011

                                           Respectfully Submitted,

                                           */s/ William P. Hicks*
                                           William P. Hicks
                                           Associate Regional Director
                                           Georgia Bar No. 351649
                                           E-mail: hicksw@sec.gov
                                           Tel: (404) 842-7675

                                           M. Graham Loomis
                                           Regional Trial Counsel
                                           Georgia Bar No. 457868
                                           E-mail: loomism@sec.gov
                                           Tel: (404) 842-7622

                                           Paul T. Kim
                                           Senior Trial Counsel
                                           Georgia Bar No. 418841
                                           E-mail: kimpau@sec.gov
                                           Tel: (404) 842-7665

COUNSEL FOR PLAINTIFF
U. S. SECURITIES AND EXCHANGE COMMISSION
3475 Lenox Road, N.E., Suite 500
Atlanta, Georgia 30326-1234
Tel: (404) 842-7600
Fax: (404) 842-7633